IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ARLENE STAFFORD, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-3016 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arlene Stafford ("Plaintiff") brings suit against the Commissioner of Social Security ("Commissioner") seeking review of the determination of the Social Security Administration ("SSA") that Plaintiff was overpaid divorced spouse's benefits and is not entitled to waiver of recovery of the overpayment. Currently before the Court is the Commissioner's motion for summary judgment [22]. For the reasons stated below, the Court denies the Commissioner's motion [22], vacates the Administrative Law Judge's May 3, 2017 hearing decision, and remands the case to the SSA for further proceedings consistent with this opinion. Civil case terminated.

**I.     Background[1]**

Plaintiff was born on August 24, 1938 and is currently eighty-one years old. In 2000, Plaintiff became entitled to Social Security benefits on the earnings record of her then-husband, Harry Mitchell ("Mitchell"), to whom she had been married for more than forty years. In 2003,

---

[1] Except where otherwise noted, the following facts are taken from the Administrative Record ("AR") prepared by the SSA. See [14] (certified copy of administrative record).

Plaintiff and Mitchell divorced. Plaintiff's Social Security benefits were converted to divorced spouse's benefits in December 2003.

On March 3, 2005 Plaintiff married Lawrence Stafford. Plaintiff did not report her remarriage to the SSA at that time. Just over ten years later, on March 17, 2015, Plaintiff applied for Social Security benefits on Stafford's earnings record. This is when the SSA first became aware of Plaintiff's marriage to Stafford. According to Plaintiff, she waited ten years to inform the SSA of her remarriage because she believed based on the advice of a friend who did not work for the SSA that she was required to wait ten years before claiming benefits under Stafford's earning record. Plaintiff also maintains that she was not aware that she had any obligation to promptly report her remarriage to the SSA.

The SSA opened an investigation and determined that Plaintiff was overpaid $78,636.30 in benefits from March 1, 2005 to August 2014 because, upon her marriage to Stafford, she was no longer entitled to benefits under Mitchell's account. The SSA sought repayment from Plaintiff even though, according to Plaintiff and not disputed by the Commissioner, Plaintiff would have been entitled to the same or greater benefits during that period based on Stafford's earnings record. See [27] at 13.

Following hearing, the ALJ determined that Plaintiff had been overpaid $78,636.30. See [14-1] at 22. The ALJ further determined that Plaintiff was not entitled to have recovery of the overpayment waived because she was at fault (the ALJ's reasoning is discussed in the analysis section below). *Id*. at 21-22. Plaintiff filed a timely request for review of the ALJ's actions by the Appeals Council. The Appeals Council denied Plaintiff's request, concluding without analysis that Plaintiff failed to provide a basis for changing the ALJ's decision. See [14-1] at 5. Plaintiff timely filed the instant appeal. See [1]. In her memorandum in support of reversing the

Commissioner's decision [15], Plaintiff argues that the ALJ erred by (1) re-opening her 2004 award of benefits without a regulatory basis; and (2) finding that Plaintiff was not without fault for receiving the overpayment. Plaintiff requests that the Court reverse the ALJ's decision, finding either that there was no statutory basis for reopening the 2004 award of benefits or that Plaintiff was without fault and it would be against equity and good conscience to require repayment. In the alternative, Plaintiff requests remand for additional proceedings.

Currently before the Court is the Commissioner's motion for summary judgment [22].

## II. Legal Standard

Because the Appeals Council denied Plaintiff's request for review, the Court evaluates the ALJ's decision "as the final word of the Commissioner of Social Security." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). The Court may affirm, reverse, or modify the ALJ's decision, with or without remanding the case for further proceedings. 42 U.S.C. § 405(g); *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The Court reviews the ALJ's decision to determine if it is supported by substantial evidence, "which has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (quoting *Pepper v. Colvin*, 712 F.3d 351, 631-32 (7th Cir. 2013)). A court reviews the entire administrative record, but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation and internal quotation marks omitted).

The ALJ's decision must contain sufficient analysis to allow the Court "to trace the path of the ALJ's reasoning from evidence to conclusion." *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 700 (N.D. Ill. 2018) (citing *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*,

662 F.3d 805, 812 (7th Cir. 2011)). Thus, "[e]ven if the court agrees with the ultimate result" reached by the ALJ, "the case must be remanded" if the decision does not "build that logical bridge." *Id*.; see also *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 743 (N.D. Ill. 2019) ("unexplained conclusions by Administrative Law Judges are not persuasive").

The doctrine of harmless error "is applicable to judicial review of administrative decisions." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Id*.; see also *McKinzey*, 641 F.3d at 892 (error can only be considered harmless if the Court is "convinced that the ALJ will reach the same result" if the evidence was properly considered). It is not sufficient for the Court to "find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does," if, "[h]ad she considered it carefully, she might well have reached a different conclusion." *Spiva*, 628 F.3d at 353.

### III. Analysis

### A. Whether the ALJ "Reopened" Plaintiff's 2004 Award of Benefits, Such that the Four-Year Time Limitation Set Forth In 20 C.F.R. § 404.988 Would Bar SSA From Seeking Repayment Under the Facts of this Case

The first question raised by the parties' briefs is whether the ALJ had (or needed) authority under 20 C.F.R. § 404.988 to "reopen" Plaintiff's 2004 award of benefits in order to determine that Plaintiff was overpaid. The regulation provides in relevant part that "[a] determination, revised determination, decision, or revised decision may be reopened *** (b) Within four years of

4

the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or (c) At any time if—It was obtained by fraud or similar fault[.]" 20 C.F.R. § 404.988. Plaintiff contends that this regulation applies to proceedings to collect overpayments and that remand is required because the ALJ made no finding that Plaintiff obtained her 2004 award by fraud or similar fault. See [15] at 5. In his motion for summary judgment, the Commissioner argues that (1) Plaintiff failed to exhaust this argument in the SSA and, therefore, has waived it; and (2) SSA's attempt to collect the overpayment from Plaintiff is not a "reopening" of her 2004 award and therefore 20 C.F.R. § 404.988 does not apply.

The ALJ's decision does not address the applicability of 20 C.F.R. § 404.988. In the Commissioner's view, this must be because Plaintiff "made clear" in the proceedings before the SSA "that she was not appealing the overpayment itself, or that she lacked means to repay the overpayment." [23] at 3 (citing AR 43-44, 52). The Commissioner cites to Plaintiff's counsel's September 18, 2015 letter to the ALJ and the December 15, 2015 "report of contact" between Plaintiff's counsel and the SSA in support of his exhaustion argument. However, as Plaintiff points out, she subsequently raised the "reopening" issue to the ALJ, both in her corrected issues statement for the administrative hearing, see [14-1] at 94 ("Ms. Stafford's hearing will involve the questions of a) whether she was overpaid, b) whether the Agency can reasonably reopen the prior determination that she was entitled to benefits on her first husband's account, and c) whether Ms. Stafford should be granted a waiver of the requirement that she repay the overpayment."), and in her pre-hearing memorandum, see [14-1] at 103 ("it does not appear that the Agency could find Ms. Stafford overpaid going back to 2005, because no finding of fraud or similar fault was made pursuant to 20 C.F.R. Sec. 404.988"). Plaintiff also raised the issue before the Appeals Council.

5

See [14-1] at 109 (explaining how section 404.988 applies). Therefore, the Court is not persuaded by the Commissioner's exhaustion argument.

As Plaintiff requests, see [15] at 5, the Court will remand to the ALJ to determine in the first instance whether, and if so how, 20 C.F.R. § 404.988 applies to the SSA's collection of overpayment from Plaintiff. See *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("If the [ALJ's] decision lacks adequate discussion of the issues, it will be remanded."). Remand is appropriate given the ALJ's expertise applying its own regulations and given that remand is required to address other issues, as well, as discussed in the next section.

> **B.  Whether the ALJ's Conclusion that Plaintiff Was Not Without Fault for Receiving the Overpayment Was Supported By Substantial Evidence In the Record**

The other issue raised by the Commissioner's motion for summary judgment is whether the ALJ's determination that Plaintiff was not without fault in causing the SSA's overpayment is supported by substantial evidence. Under the applicable statutory scheme, recovery of an overpayment will be waived for "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). An individual is not without fault when the overpayment resulted from either (1) an incorrect statement made by the recipient that she knew or should have known was false, (2) failure to furnish information that the recipient knew or should have known was material, or (3) acceptance of a payment that she knew or could have been expected to know was not the correct amount. 20 C.F.R. § 404.507(a)-(c). When determining whether a recipient is without fault in causing the overpayment of benefits, the SSA must take into account "any physical, mental, educational, or linguistic limitations such individual may have." 42 U.S.C. § 404(b)(2). "'The decision which must be reached in a fault determination is highly *subjective,* highly dependent on

6

the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation.'" *Begoun v. Astrue*, 2011 WL 307375, at *7 (N.D. Ill. Jan. 28, 2011) (quoting *Lozano v. Apfel,* 1999 WL 731702, at *4 (N.D. Ill. Aug. 30, 1999)); see also *Barnett v. Colvin,* 2016 WL 6780325, *5 (N.D. Ill. Nov. 15, 2016).

At the hearing before the ALJ, Plaintiff testified that "she was unaware of her responsibility to report significant changes in her life that may affect her entitlement status." [14-1] at 21. The ALJ nonetheless concluded that Plaintiff was at fault for the overpayment based on the following:

1. "The record indicates that the claimant did receive notices regarding possible changes in her benefits in 2015 and there is no evidence that the claimant did not receive similar notices regarding her benefits from March 2005 to March 2015." [14-1] at 21.

2. Plaintiff acted unreasonably in relying on the advice of a friend (who did not work for SSA) who told her that if she ever remarried, she would have to wait ten years to apply for benefits under her new husband's account. [14-1] at 21. Plaintiff's failure to check the validity of her friend's statement with the SSA was unreasonable.

3. "[T]he fact that [Plaintiff] reported her divorce from Mr. Mitchell in December 2003 in a timely fashion suggests that [Plaintiff] was aware of her responsibility to report significant changes in her life that may affect her benefits, particularly her marital status, prior to her marriage to Mr. Stafford in March 2005." [14-1] at 21.

4. Plaintiff had the mental capacity to understand her reporting responsibilities, as demonstrated by the fact that she "cared for herself after her divorce in 2003, worked after her divorce in 2003 and reported her 2003 divorce to the Administration." [14-1] at 22.

There are at least two problems with this analysis, both of which go to the central issue of whether Plaintiff knew or should have known of her obligation to report her remarriage to the SSA

7

prior to 2015. First, the ALJ presumes that Plaintiff received notices concerning her benefits between March 2005 and March 2015, based on the fact that Plaintiff received notices concerning possible changes in her benefits in 2015. However, as the Commissioner has conceded, Plaintiff "is correct that the record does not include specific notices delineating her reporting responsibilities, and the ALJ should not have relied on the likelihood that she received such notices." [23] at 9.

Further, the ALJ's decision does not identify any evidence in the record from which it might be presumed that Plaintiff received such notices—for instance, standard operating procedures of the SSA to mail out notices periodically or following certain events (such as a change in the payment amount). The decision refers to "notices regarding possible changes in [Plaintiff's] benefits in 2015" in support of the presumption that Plaintiff received "similar" notices between 2005 and 2015. But the notices Plaintiff received in 2015 were unique: they were spurred by Plaintiff's application for benefits under Stafford's account. At that point, the SSA first became aware that Plaintiff had been remarried and should not have been receiving benefits under her ex-husband's account.

The only evidence in the record concerning Plaintiff's receipt of notices prior to 2015 is Plaintiff's testimony that she did not receive notices. The ALJ does not appear to credit this testimony, but does not make any credibility findings. To the extent the ALJ believed Plaintiff's testimony was not credible, he was required to explain why. See *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (ALJ erred by insufficiently explaining why he discredited testimony of disability claimant concerning the severity of his symptoms); see also *Viehman v. Schweiker*, 679 F.2d 223, 228 (11th Cir. 1982) (where claimant's own testimony was critical in determining whether he was "without fault" in accepting overpayment of disability benefits on behalf of his

8

daughter, it was necessary for the fact finder to articulate any reasons for questioning his credibility).

The second problem with the ALJ's analysis is that it identifies no evidence in the record that Plaintiff reported her divorce to the SSA in 2003. The record does not contain, for instance, a signed copy of Plaintiff's application for divorced spouse benefits, or information about the SSA's standard procedures for converting spouse's benefits in the case of divorce. The ALJ's assumption that Plaintiff personally (rather than, for instance, her husband or one of their attorneys) notified the SSA of her divorce underlies his conclusions that Plaintiff both (1) actually knew prior to her remarriage in 2005 that she had an obligation to report the marriage to the SSA; and (2) had the mental capacity to understand the need to report the marriage.

The Commissioner argues that it is proper to presume that Plaintiff personally reported her divorce to the SSA in 2003 because "[a] requirement for receiving divorced spouse benefits, however, is that the divorced spouse herself must apply for such benefits." [23] at 9 (citing 20 C.F.R. § 404.331(b)). But is not clear to the Court whether this regulation applies under the facts here, because one of the other requirements for obtaining divorced spouses' benefits under this provision is that the applicant has "been divorced from the insured person for at least 2 years," 20 C.F.R. § 404.331(f)—a requirement that Plaintiff would not have met in 2003 when the Commissioner contends she must have notified the SSA of her divorce. Further, according to Plaintiff, "internal Agency operating guidelines set forth that spousal benefits can be converted to divorced spouse benefits without the filing of a new application when, as here, the divorced spouse was full retirement age and had been married for at least ten years." [27] at 8-9 (citing POMS RS 00202.05(B)(1)(b), *available at* https://secure.ssa.gov/poms.nsf/lnx/0300202005 ("To be entitled to benefits as divorced spouse, a claimant must: *** file an application for benefits (see SM

9

03020.040 for when the system converts a spouse who is full retirement age and who was married to the NH for at least 10 years to benefits as a divorced spouse, and see GN 00201.005 for when an application is required for Title II re-entitlement to benefits)[.]")). Neither the ALJ's decision nor the Commissioner's brief discuss this POMS provision. Finally, Plaintiff did not recall ever informing SSA that she and Mitchell had divorced. In sum, there is nothing in the ALJ's decision or the administrative record that supports a finding or a presumption that Plaintiff personally reported her divorce to the SSA in 2003.

The Commissioner contends that the Court should affirm the ALJ's finding of fault even if not all of the bases for decision are supported by evidence in the record, because "'[n]ot all of the ALJ's reasons must be valid as long as enough of them are.'" [23] at 10 (quoting *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009)). *Halsell* involved a credibility finding that a disability claimant was exaggerating her medical symptoms, and the ALJ "cited other sound reasons for disbelieving" the claimant. In this case, by contrast, it is not clear to the Court that the ALJ's conclusion on the "highly subjective" determination of fault would have been the same but for the problems discussed above. *Begoun*, 2011 WL 307375, at *7; see also *McKinzey*, 641 F.3d at 892. For instance, if the ALJ had not assumed that Plaintiff reported her divorce to the SSA in 2003 or received notices from the SSA between 2005 and 2015, he might have given more weight to Plaintiff's evidence concerning her "mental[ and] educational" limitations and their effect on her ability to understand the need to report her remarriage. 42 U.S.C. § 404(b)(2). In particular, there is medical evidence in the record that Plaintiff was suffering from adjustment disorder following her divorce from Mitchell, experiencing anxiety and depression, and fearful of her future due to lack of education, training, and skills. See [14-1] at 104. Therefore, the Court cannot say that the errors were harmless, and must remand for further proceedings to consider whether

Plaintiff is without fault and, if so, whether she has met the other requirements of 42 U.S.C. § 404(b)(1).

## VI. Conclusion

For all the reasons set forth above, the Court denies the Commissioner's motion for summary judgment [22], vacates the Administrative Law Judge's May 3, 2017 hearing decision, and remands the case to the Social Security Administration for further proceedings consistent with this opinion.  Civil case terminated.

Dated: November 13, 2019

_____
Robert M. Dow, Jr.
United States District Judge